STATE OF NORTH CAROLINA ON THE RELATION OF A. G. MYERS, J. ALLAN TAYLOR, E. K. BISHOP, JAMES A. GRAY, JOHN W. HOUSE, I. M. BAILEY, GEORGE MARSH, T. J. PURDIE, M. O. BLOUNT, T. AUSTIN FINCH, CHAS. G. YATES AND SAM P. BURTON, CONSTITUTING THE TRANSPORTATION ADVISORY COMMISSION, v. WILMINGTON-WRIGHTSVILLE BEACH CAUSEWAY COMPANY, TIDEWATER POWER COMPANY AND OTHERS.

(Filed 1 March, 1933.)

1. **Judgments M a—Judgment stands until reversed or modified according to law.**

Where in a proceeding for the condemnation of land by the State for the purpose of transferring same to the Federal Government for an inland waterway, chapter 266, Public Laws of 1925, chapter 44, Public Laws of 1927, chapters 4 and 7, Public Laws of 1929, the State denies the title of the defendants to the lands in question, and judgment is entered by the court upon its findings of fact that defendants were the owners in fee of the lands and were entitled to just compensation and damages resulting from such taking, and it is ordered that the cause be retained for trial upon the issue of the amount of compensation and damages, and no appeal is taken from the judgment and the judgment is not reversed or modified according to law, it is conclusive in all respects upon the parties. C. S., 601.

**2. Eminent Domain C e—Defendants held entitled to have amount reasonably expended for construction of draw-bridge included as element of damages.**

Lands of the defendant public-service corporations were condemned by the State for the purpose of transferring same to the Federal Government for an inland waterway. Defendants maintained a bridge and trestle over the waters where the canal was to be constructed, and it was necessary to destroy them, necessitating the construction of a temporary bridge for the maintenance of defendants' franchises. A permanent draw-bridge was thereafter constructed by defendants in accordance with specifications and requirements of the United States Government in its jurisdiction over navigable waters. The trial court allowed compensation and damages for the lands actually taken, for the easement acquired over the other lands of defendants, the amount reasonably expended for the construction of the temporary bridge and the rebuilding of mains and electric lines: *Held,* the amount reasonably expended by defendants for the construction of the draw-bridge in accordance with the specifications of the United States Government should have been included as an element of damages, the construction of such draw-bridge being necessary for the preservation of defendants' franchises as public-service corporations, and for the preservation of the value of their property not included in the right of way condemned.

APPEAL by defendants from *Barnhill, J.,* at January Special Term, 1932, of NEW HANOVER. Error and Remanded.

Since the appeal by the defendants from the order of Grady, J., at September Term, 1929, of the Superior Court of New Hanover County, in the above entitled action, was heard and decided by the Supreme Court, at Spring Term, 1930 (199 N. C., 169, 154 S. E., 74), the issues raised by the pleadings involving the title to the lands described in the complaint have been tried and determined in accordance with the contentions of the defendants. On the facts found by the court, and in accordance with its conclusions of law, as set out in the judgment, it was ordered, adjudged and decreed that each of the defendants is entitled to just compensation for the land owned by the said defendant and taken by the plaintiff for the purpose of conveying the same to the United States for use as a right of way for an inland waterway, to be constructed under the provisions of an act of Congress. It was further ordered that the action be and the same was retained for the assessment of damages as provided by law or by agreement of the parties. This judgment was rendered by Midyette, J., on 25 May, 1931. Neither of the parties has prosecuted an appeal from said judgment to the Supreme Court.

Pursuant to the order in the foregoing judgment, the action came on for trial, and was tried before Barnhill, J., at January Special Term, 1932, of the Superior Court of New Hanover County, when and where judgment was rendered as follows:

"This cause was originally tried before Midyette, J., upon a waiver of trial by jury, at which trial all issues raised by the pleadings, except the issue of damages or compensation, were determined. The cause now comes on to be heard by the undersigned judge at this the January Special Term, 1932, of the Superior Court of New Hanover County. When the cause was called for trial, all parties specifically waived trial by jury and agreed that the court should hear the evidence, find the facts therefrom, and render judgment thereon as upon a verdict of a jury. Failure to have a hearing before commissioners, and all other omissions or irregularities in the preliminary proceedings were likewise waived.

The court proceeded to hear the evidence which appears of record, upon the following issue: 'What amount are the defendants entitled to recover of the plaintiffs as compensation for the lands taken and condemned for a right of way for the Inland Waterway Canal over and across the lands of the defendants?'

After hearing the evidence and the argument of counsel, and after consideration of the briefs submitted by counsel, the court finds the following facts:

1. The lands of the defendant Tidewater Power Company, hereinafter referred to as the Power Company, so condemned, is a strip 192.5 feet by 1,000 feet; and the lands of the defendant, Wilmington-Wrightsville Beach Causeway Company, hereinafter referred to as the Causeway Company, so condemned, is a strip 207.5 feet by 1,000 feet. The two parcels are contiguous and constitute a strip of land 400 feet by 1,000 feet, and forms a part of the rights of way of the two defendants, which are public-service corporations, from the mainland at Wrightsville Station to Harbor Island, and as to the defendant Tidewater Power Company, it constitutes a part of the right of way of its interurban system extending from Wilmington to and through the town of Wrightsville Beach.

2. Of the land condemned a strip 400 feet by about 206 feet was actually taken and has been converted into a part of the Inland Waterway Canal.

3. In constructing said canal it was necessary to cut the rights of way of the defendant companies, and in so doing a trestle of the defendant, Tidewater Power Company (about 201 feet in length), and about 5 or 6 feet of its fill was destroyed; and a part of the bridge of the defendant Causeway Company (about 180 feet in length), and about five or six feet of its fill, was removed.

4. There is an artificially constructed fill extending from Harbor Island westward to within a short distance of the mainland at Wrightsville Station used jointly by the defendants as a right of way. This

fill is constructed over and across sound marshland, most of which (except the fill itself) overflows at high tide. The land between the western end of the ·fill and the mainland is composed of marshland and a small stream or water course known as Bradley's Creek. The canal does not follow the said stream across the premises in controversy and the question of navigability of said stream raised by plaintiffs has been adjudged at the former hearing.

5. The space between the fill and the mainland referred to in the foregoing paragraph was, on the part of the Power Company, bridged by a trestle, and on the part of the Causeway Company, by a bridge.

6. In constructing said Inland Waterway Canal about 201 feet of said trestle and about 180 feet of said bridge, were completely cut away and destroyed; and in addition thereto, five or six feet were cut off the end of the fill. The right of way condemned but not actually within the bounds of the canal—approximately 800 feet by 400 feet—lies mostly to the east of the canal itself and embraces a portion of said feet.

7. The plaintiff, acting under the authority conferred by statute—chapter 44, Public Laws of North Carolina, 1927, and chapters 4 and 7, Public Laws of North Carolina, 1929—brought this action, condemned said right of way over and across the property of the defendants, 1,000 feet by 400 feet, and immediately conveyed said easement to the United States of America to be used in the construction of the Inland Waterway, as contemplated by said acts of the General Assembly of North· Carolina. The actual cutting of said property of the defendants was done by the authority of the government of the United States, but there is a stipulation of record in this action, by the terms of which plaintiffs bind themselves not to· undertake to avail itself of that fact; and the question before the court is to be determined as if said cutting had been done by the plaintiffs. The terms of said stipulation are not sufficiently broad to bind the State to pay for a draw-bridge installed under regulations and requirements of the government of the United States relating to crossings over navigable streams.

8. The defendant Power Company had and maintained gas mains and electric lines along said right of way extending to the town of Wrightsville Beach for the service to its customers on Harbor Island and in the town of Wrightsville Beach. In cutting said canal, it was necessary for and the government of the United States did sever these mains and lines.

9. The actual taking of said property by the government of the United States was begun on 4 November, 1930, and in order for the defendants to prevent any interruption in their service to the public and to maintain their respective franchises, it was necessary for them to, and they did, construct a temporary bridge or structure for use jointly by the defendants during the time the use of their rights of way at the point

of said canal was prevented by the cutting of the canal and the construction of a draw-bridge over the same.

10. In reconstructing their rights of way, after the construction of the said canal, the defendants were required by the government of the United States to build and maintain a draw-bridge in accordance with the rules and regulations prescribed by said government, in the exercise of its jurisdiction over navigable streams, which requirements were imposed by virtue of the authority of said government over navigable waters and in order to permit free passage of ships along said canal, the canal as constructed being navigable.

11. The value of the lands taken, and of that subjected to the dominant easement of the government of the United States, as well as of the lands of the defendants lying to the eastward, rest almost entirely, if not exclusively, on its availability and adaptability for the uses to which it is now being subjected, to wit: as a right of way for public-service corporations. The said property, disconnected from and not considered in connection with the respective franchises of the defendant companies, is of little value.

12. In the condemnation of said property, the respective franchises of the defendant companies, were not taken or materially interfered with, except that in order to maintain the same it was necessary for the defendants to construct the temporary bridge or structure referred to in paragraph 9.

13. The reasonable value of the trestle of the defendant Power Company, which was destroyed, and the value of the lands actually taken, including bulkhead and part of fill, was thirty-nine hundred dollars ($3,900).

14. The reasonable value of that part of the bridge of the defendant Causeway Company, including the land actually taken, was eleven thousand dollars ($11,000).

15. The easement imposed on the lands of both defendants which was not actually taken in the construction of the canal was reasonably worth five hundred dollars ($500), and the said sum will fully compensate defendants for the imposition of said easement upon their lands.

16. It reasonably cost the defendant Power Company fifteen hundred ninety-five and 53/100 dollars ($1,595.53) to rebuild and replace its gas mains, which were cut and removed in the construction of said canal; and nineteen hundred ninety-two and 14/100 dollars ($1,992.14) to rebuild and replace its electric lines which were likewise cut and removed in the construction of said canal.

17. It reasonably cost the defendant the sum of twenty-eight hundred fifty-two and 67/100 dollars ($2,852.67) to construct a temporary bridge for use pending the construction of the canal and to operate the same

during said period. This includes cost of engineering, supervision of construction, and expense of removal of structure after the use of the same had been abandoned. Of the amount claimed by the defendants for this item, the salaries of two of the operators for the period of the operation of said temporary structure was not incurred by reason of said condemnation, for the reason that their services were required in the operation of the original bridge. Only one additional operator, in order to provide twenty-four hours service, was required.

18. There were no benefits, either general or special, accruing to the defendants or either of them by reason of the construction of said canal.

19. Any and all items of expense or alleged damage claimed by the defendants or either of them not mentioned in the foregoing findings of fact are disallowed by the court as elements of compensation.

The court is of the opinion that defendants are not entitled to recover for the costs of the construction of the draw-bridge and expenses incident thereto, or to have the same considered as an element of damage in arriving at a sum which will justly compensate them for the land taken and subjected to the dominant easement involved in this controversy for the reason that the same was required by the government of the United States in the exercise of its regulatory authority over and concerning navigable waters. It is, however, of the opinion that the just compensation the plaintiff is required to pay to the defendants for the taking of said lands and the imposition of said easement embraces the reasonable value of the property taken; the decreased value of the residue of the property owned by the defendants by reason of the imposition of said easement upon their lands; and the reasonable costs incurred in maintaining a temporary service for the preservation of their respective franchises, pending the construction of the canal. These items as found by the court are included in findings of fact Nos. 13, 14, 15, 16 and 17, and total the sum of twenty-one thousand eight hundred forty and 34/100 dollars ($21,840.34). And the court finds as a fact that the value of the lands taken, and the decreased value of the remaining property owned by the defendants and not taken by the plaintiffs, will not exceed said sum, and that the payment of said sum will constitute full and just compensation for the lands taken and the easement imposed upon the lands of the defendants.

The defendants announced in open court that they had an agreement for the distribution of any recovery in this action, and requested the court to award the sums allowed in this action to the defendants jointly.

It is therefore ordered, considered and adjudged that the defendants have and recover of the plaintiffs as just compensation for the lands taken and the easement imposed, the sum of twenty-one thousand eight

hundred forty and 34/100 dollars ($21,840.34) with interest thereon from 4 November, 1930, together with their costs incurred in this action, to be taxed by the clerk.          M. V. BARNHILL, *Judge Presiding.*"

Each of the defendants excepted to the foregoing judgment and appealed therefrom to the Supreme Court.

*I. M. Bailey and Bryan & Campbell for plaintiffs.*
*Thos. W. Davis and L. J. Poisson for defendant Power Company.*
*George Rountree and J. O. Carr for defendant Causeway Company.*

CONNOR, J. This action was begun in the Superior Court of New Hanover County on 15 July, 1929. It was begun and prosecuted in the name of the State of North Carolina by the Transportation Advisory Commission, as an agency of the State organized under the provisions of chapter 266, Public Laws of North Carolina, 1925. This statute is entitled, "An act to create an Advisory Commission to investigate and report upon the question of freight rate discrimination and upon the question of the development of waterways." The Commission was expressly directed to investigate and report to the Governor "what action, if any, the State can safely and properly take in coöperation with the Federal Government or otherwise, to aid in the development of water transportation to and from North Carolina ports." The statute became effective on 10 March, 1925, and since said date has been in full force and effect.

The Congress of the United States in the River and Harbor Act, which was approved on 21 January, 1927, authorized the construction by the Federal Government of an inland waterway or inter-coastal canal, in accordance with surveys and reports made by United States engineers, in aid of interstate commerce by water transportation, provided the right of way for such inland waterway or canal was furnished by local interests, without cost to the United States. This inland waterway or inter-coastal canal, as located by the engineers, and as authorized by Congress, extended in part from Beaufort to Cape Fear River, in North Carolina. By the provisions of chapter 44, Public Laws of North Carolina, 1927, as amended by chapters 4 and 7, Public Laws of North Carolina, 1929, the General Assembly of this State undertook to furnish to the United States, without cost to the Federal Government, the right of way for said waterway or canal from Beaufort to Cape Fear River, and to that end authorized and directed the Transportation Advisory Commission to secure such right of way, either by agreement with the owners of lands over which the right of way was located, or by condemnation under the power of eminent domain, conferred upon the said Commission for that purpose.

This action was begun to secure the right of way for said inland waterway or inter-coastal canal over the lands described in the complaint. The defendants were in possession of said lands, claiming the title thereto in fee. The plaintiffs denied that the defendants were the owners of said lands, and alleged that the State had the right to take possession of the same without paying compensation or damages to the defendants. In an appeal by the defendants to this Court from an order made in the action by Grady, J., at September Term, 1929, of the Superior Court of New Hanover County, it was held that the facts stated in the complaint are sufficient to constitute a cause of action on which the plaintiffs are entitled to relief. The validity of the statutes under which the action was begun and prosecuted, was upheld. The order denying the motion of the defendants that the action be dismissed was affirmed. See *Myers v. Causeway Co.,* 199 N. C., 169, 154 S. E., 74.

Since the appeal by the defendants from the order of Grady, J., was heard and decided by this Court, the action has been tried on the issues raised by the pleadings and involving the title to the lands described in the complaint. At this trial before Midyette, J., on the facts found by the court, it was adjudged that the defendants are the owners in fee of the lands described in the complaint, and taken by the plaintiff under the power of eminent domain. It was further adjudged that the defendants are entitled to just compensation for said lands, and to damages resulting from the taking of said lands by the plaintiff. It was ordered that the action be and the same was retained for trial of the issue involving the amount which the defendants are entitled to recover of the plaintiff as compensation and damages. The judgment rendered by Judge Midyette is dated 25 May, 1931. This judgment has not been reversed or modified according to law, and is conclusive in all respects upon the parties to this action. C. S., 601.

On their appeal to this Court from the judgment of Judge Barnhill, the defendants contend that there is error in said judgment for that the court held as a matter of law that the defendants are not entitled to recover of the plaintiffs, as an element of their damages, the cost of the construction of the draw-bridge which the defendants were required to construct over the lands taken by the plaintiffs, under the power of eminent domain, in order to maintain their respective franchises as public-service corporations, and to preserve the value of their property not included within the right of way for the inland waterway or inter-coastal canal, which has been constructed by the United States Government. The court did not include in the amount awarded to the defendants the cost of such bridge, nor did it find the reasonable cost of the construction of a bridge for that purpose, although there was evidence tending to show such cost. In this there was error. On all the facts

appearing in the record, the amount reasonably expended by the defendants in the construction of the bridge over the right of way of the inland waterway or canal, in order to maintain their respective franchises as public-service corporations, and to preserve the value of their property not included in the right of way, is a proper element of the damages which the defendants are entitled to recover in this action. In order that such amount may be found by the court, and included in the judgment, this action is remanded to the Superior Court of New Hanover County.

Error and remanded.